# EXHIBIT 1

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

STEPHEN M. RUFF, an individual; Ram
Reddy, M.D., an individual, and Madhubala
Reddy, and individual,

        Plaintiffs,

v.

ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, a Minnesota corporation; ALLIANZ LIFE INSURANCE COMPANY OF NEW YORK; and WINTRUST LIFE FINANCE f/k/a FIRST INSURANCE FUNDING CORP., an Illinois corporation,

        Defendants.

Case No.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, STEPHEN M. RUFF ("Ruff", and collectively "Plaintiffs"), and Madhubala Reddy and Ram Reddy, M.D. ("Reddy", and collectively "Plaintiffs"), sue Defendants, ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, ALLIANZ LIFE INSURANCE COMPANY OF NEW YORK(collectively "Allianz"), and WINTRUST LIFE FINANCE f/k/a FIRST INSURANCE FUNDING CORP. ("First Insurance", and collectively "Defendants"), and state as follows:

### JURISDICTION, PARTIES, AND VENUE

1. This is an action for damages in excess of $15,000.00, exclusive of costs, interest, and attorneys' fees.

2. Plaintiff, Stephen M. Ruff( "Ruff") is an individual residing in the State of Florida, with his principal place of business in Seminole County, Florida, and is a licensed insurance agent in the State of Florida.

3. Plaintiff, Ram Reddy, M.D.( "Reddy") is an individual residing in the State of Florida, with his principal place of business in Orange County, Florida, and is a licensed medical doctor.

4. Plaintiff, Madhubala Reddy( "Reddy"), is an individual residing in the State of Florida.

5. Defendant, Allianz Life Insurance Company of North America ("Allianz"), is a Minnesota corporation, authorized and registered as a foreign for profit corporation to do business in the state of Florida.

6. Defendant, Allianz Life Insurance Company of New York ("Allianz"), is a New York corporation, doing business in Florida.

7. Defendant, Wintrust Life Finance f/k/a First Insurance Funding Corp. ("First Insurance"), is an Illinois corporation at all relevant times conducting business in Florida.

8. Non-party Advisors Excel, LLC ( "AE") is a Kansas limited liability company which is field marketing organization("FMO"), is registered to do business in Florida and which acted as an agent and representative for Defendants in Florida.

9. This Court has jurisdiction over Defendants pursuant to Section 48.193(1), Florida Statutes, because Defendants operate, conduct, engage in, or carry on a business or business venture in this state and breached a contract in Florida by failing to perform acts required by the contract to be performed in Florida.

2

10. This Court has personal jurisdiction over Defendants pursuant to Section 48.193(2), Florida Statutes, because Defendants are engaged in substantial and not isolated activity within Florida, including buying and selling insurance in Florida, sending numerous written, electronic, and telephonic communications into Florida, advertising or actively promoting its business in Florida, purposefully and repeatedly dealing with Florida companies, hiring and managing agents to sell insurance in Florida, and operating a commercial website accessible to Florida residents.

11. This Court also has personal jurisdiction over Defendants pursuant to Section 48.193(2), Florida Statutes, because Defendants engaged in substantial and not isolated activity within Florida, including hiring agents to sell insurance in Florida, sending numerous written, electronic, and telephonic communications into Florida, advertising or actively promoting their insurance products and business in Florida, and purposefully and repeatedly dealing with Florida companies.

12. Venue is proper in because the causes of action alleged accrued in Florida in this district.

**FACTUAL BACKGROUND**
*Formation of the Relationship, and the Contract*

13. Allianz is an insurance firm that specializes in the development and sale of insurance and investment products across the United States, including Florida.

14. Ruff is a licensed insurance agent in Florida. Ruff is an agent under, and after being recruited by the FMO AE, also referred to by Allianz as a "Master Agent." Once contracted with an FMO, insurers such as Allianz simply tell the FMO that they wish for the agent to be licensed with the insurance carrier and, in turn, the FMO acted

as Allianz's agent in the process of the application on behalf of the agents. This was the case with the relationship between Ruff, AE, and Allianz.

15. AE, on behalf of Allianz, made numerous representations to Ruff in order to induce him to agree to act as an agent for Allianz. These representations included what Ruff's compensation would be. An application was provided by Ruff( Exhibit A), but none of the addenda and policies which make up the entire agreement were provided. Nothing at all was given to Ruff other than the application- no contract, and no terms governing the relationship. Further, Defendants' agent AE did not disclose that Ruff could be subject to certain onerous charge back policies, nor did they disclose that Ruff's valuable clients could be subject to unilateral and retaliatory termination.

16. Ruff – a licensed Florida agent – agreed to with help Defendants locate clients to purchase insurance policies in Florida.

17. Ruff, through AE, and Defendants formed a business relationship in which Plaintiff reposed trust in Defendants; in return, Defendants agreed to treat Ruff as an agent and fiduciary.

### *The Reddy Insurance Policy*

18. In early to mid- 2011, Ruff referred multiple clients to Allianz, including Reddy, and Ruff concluded sales of insurance policies to Reddy, more specifically a Flexible Premium Adjustable Life Insurance Policy, Policy No. xxxx0484, which became effective on May 5, 2015 as well as Policy No. xxxx0481, which became effective on May 11, 2015. Reddy entered into an agreement with Defendants. Exhibit B.

19. The initial specified amount of Policy No. xxxx0484 was $2,276,555.00.

20. The initial specified amount of Policy No. xxxx0481 was $800,000.

21. First Insurance has a referral relationship with Allianz. Reddy then entered into an Assignment of Life Insurance Policy as Collateral with First Insurance, dated April 7, 2015, which assigned their interest in Policy No. xxxx0484 and Policy No. xxxx0481 to First Insurance as collateral to secure a loan.

22. Under the Assignment agreements, the assignment granted First Insurance the right to surrender the Policies and receive the surrender value thereof should the terms of the agreement be breached.

23. The loan was set to renew in December of each year, at which time it is determined if the loan is fully collateralized and the yearly interest is to be paid up front.

24. The commission structure on these policies - called "High Cash Value" policies - was such that Ruff would get a much smaller initial commission on the sale of these products, but would then receive a yearly renewal commission on each anniversary of the policies' issuance.

25. First Insurance made several attempts to surrender the Reddys' policies even though no breach had occurred.

26. As the loan was set to renew in December of 2015, it was determined by First Insurance that an additional $58,000.00 in collateral was needed, PLUS the yearly interest payment of $51,713.49 was required to renew the loan. This essentially required Defendants Reddy to pay a lump sum of $109,713.49, which was an insurmountable amount of money to pay in a lump sum.

27. Due to the inability to pay the demanded amount, First Insurance sent a default notice to Defendants and Reddy and threatened to have the policies surrendered and the surrender value transferred to themselves.

28. First Insurance began charging Reddy default interest at an addition 5% of annum even though no default existed. Reddy never missed or was late on a payment until these made up interest charges began.

29. Feeling as though something was incorrect, the Plaintiffs began to recalculate the loan and the collateralization thereupon. It was found that there was no need for additional collateral at all. The collateralization had been miscalculated by First Insurance. Had the calculation been completed correctly, whereby making the only payment due and owing the yearly interest payment of $51,713.49, the Reddy could have made that payment immediately in a lump sum. It took until March of 2016 for Defendant First Insurance to acknowledge this miscalculation.

30. Despite this acknowledgment that the miscalculation was due to Defendants' error, First Insurance refused to allow Reddy to make the interest payment and renew the loan.

31. After exhausting all reasonable means to get the issue straightened out, Reddy then filed a complaint with the Illinois Department of Banking against First Insurance and their parent company, Wintrust Bank. As a result, Defendant First Insurance began to retaliate against the Plaintiffs for filing the complaint.

32. On May 12, 2016, First Insurance sent Allianz an email request for surrender of the Policies and payment of their surrender proceeds.

33. Reddy immediately contested First Insurance's collateral assignment with Allianz.

34. Allianz filed an interpleader on May 18, 2016.

35. Reddys' policies were eventually surrendered on May 4, 2017. The policies' anniversary date was May 5, 2017.

36. Defendants took the position that Ruff was owed no commissions at all and, in fact, was being charged back pursuant to a purported "charge back" policy.

37. Ruff began contacting Allianz and First Insurance to dispute their actions and to lodge a complaint that Reddys' policies were terminated one (1) day prior to the anniversary date-one day before a large commission was owed to Ruff. In addition, if the policy termination had occurred on May 5, 2017, Ruff's charge back would have only been 50% of commissions paid; however, since it was terminated on the 4th, his charge back was 100%, obviously timed to improperly misappropriate the benefits to which Plaintiffs were entitled.

38. Shortly afterwards, Defendants stopped returning Ruff's telephone calls and emails.

39. This extended "charge back" schedule was not provided to Ruff at any time prior to this occurrence. In fact, it was contrary to the representations made to Ruff in order to induce him into entering the agreement and contrary to industry standard practice.

40. Inexplicably, and not discovered until much later, the Reddys' policies were reinstated in late May 2017. This reinstatement would have automatically triggered a commission check to be paid to Ruff and the charge back to be stopped; therefore, Allianz had to have manually overrode the system to prevent this from happening.

41. These policies were finally surrendered in September 2016.

42. Defendants refused – and continue to refuse – to pay Ruff's commission in connection with these policies or remove the charge back.

43. Prior to final cancellation of Reddy's policies, Allianz refused to allow the Plaintiffs to reinstate (with payment in full) and refused to allow the Plaintiffs to move the policy to another insurance company, both of which are contrary to industry practice and makes zero business sense. Defendants tortious actions were taken to punish the Plaintiffs and to appropriate the benefit of their agreements with Defendants.

*Defendants' Negligent Handling of Ruff's Garnishment and Defendants' Retribution*

44. On April 20, 2016, Allianz was served a writ of garnishment re: Ruff in the amount of $266,550.73 pursuant to a judgment unrelated to this action.

45. Ruff immediately filed a Head of Household exemption.

46. Allianz failed to timely answer the writ, even going as far as stating in the court record that the writ "fell through the cracks". No monies were due to Ruff from Allianz at the time the writ was served. Allianz finally filed its answer on August 11, 2016.

47. Allianz left Ruff's wages open and exposed during this four (4) month delay, leading to Ruff losing over $115,000.00 to this garnishment plus the 100% charge back.

48. This error by Allianz forced Ruff into a bankruptcy due to the garnishment, which caused great financial and reputational damage to Ruff as he is in the financial services industry.

49. Instead of making Ruff whole, even though Allianz admitted to the error, the Defendant instead began a campaign of retribution against Ruff which caused even further damages and embarrassment to Ruff.

50. Allianz terminated Ruff in retribution for Ruff's insistence on having Allianz be held responsible for its actions. To further evidence retaliation and breaches of its duties, shortly after Ruff was terminated in May of 2017, Ruff received his plaque for winning Allianz's "Blue Award" for 2016, which is only given to the top producing agents.

51. Defendants refused – and continue to refuse – to pay Ruff the fees and costs associated with Defendants' in house counsel's negligent handling of the writ of garnishment. In addition, Allianz's termination of Ruff's agency caused Ruff to be unable to sell Allianz products (which were some of Ruff's highest selling products) after he had expended extensive time and resources, including licensure in multiple states, to pursue the mutual business enterprise. Further, Ruff could no longer service his existing clients with Allianz products, which cause more damage and reputational embarrassment.

## COUNT I
### Breach of Contract (the Commission Agreement) and Duty of Good Faith and Fair Dealing
### (Ruff Against Allianz)

52. Ruff re-alleges and incorporates by reference Paragraphs 1 through 51 above.

53. This is a cause of action by Ruff against Defendants for breach of contract.

54. Ruff and Defendants entered into an enforceable agreement, and the parties agreed to amend the agreement to extend their agreement to split commissions to additional transactions. Ruff performed under the Agreement and amendments thereto.

55. Defendants breached the Agreement and amendments thereto in material respects by 1) failing to pay Ruff a commission; 2) failing to account to Ruff for commissions; and 3) for improperly terminating the Agreement.

56. Defendants also breached the implied covenant of good faith and fair dealing in the Agreement by using Ruff to locate insurance clients but failing to pay a commission to Ruff and for terminating Ruff for retaliatory reasons.

57. Defendants further breached the implied covenant of good faith and fair dealing by canceling the Reddy policies one day before it's anniversary date (which would have triggered a commission to be paid to Ruff as well as reduce the charge back to Ruff should a default occur), reinstating the policy days later (without notifying Ruff) and purposely stopping the commission to be paid to Ruff, and refusing to rectify and commission and charge back issues.

58. As a direct and proximate cause of Defendants' breaches of the Agreement, Ruff suffered significant damages.

59. WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, and all other relief that the Court deems just and proper.

### COUNT II
### Breach of Contract and Duty of <u>Good Faith and Fair Dealing</u>
### (Reddy Against First Insurance)

60. Plaintiff Reddy re-alleges and incorporates by reference Paragraphs 1 through 51 above.

61. This is a cause of action by Plaintiff against First Insurance for breach of contract.

62. Plaintiff and Defendants entered into an enforceable Contract. Plaintiff performed under the Contract and amendments thereto.

63. Defendants breached the Contract and amendments thereto in material respects by forcing the surrender of the Reddy policies when no default existed.

64. Defendants further breached the implied covenant of good faith and fair dealing by demanding a cure for a phantom default, which resulted from Defendant's own miscalculation. Similarly, Defendants further breached the implied covenant of good faith and fair dealing by failing to correct this "default" even upon learning and acknowledging the miscalculation.

65. As a direct and proximate cause of Defendants' breaches of the Contract, Plaintiff suffered significant damages.

66. WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, and all other relief that the Court deems just and proper.

## COUNT III
### Breach of Contract (the Commission Agreement) and Duty of Good Faith and Fair Dealing
### (Ruff Against First Insurance)

67. Plaintiff Ruff re-alleges and incorporates by reference Paragraphs 1 through 51 above.

68. This is a cause of action by Plaintiff against First Insurance for breach of contract.

69. Plaintiff and Defendants entered into an enforceable Contract. Plaintiff performed under the Contract and amendments thereto.

70. Defendants breached the Contract and amendments thereto in material respects by failing to forcing a surrender of Ruff's policy even though no default existed.

71. Defendants further breached the implied covenant of good faith and fair dealing by demanding payments be made in ways not directed by the contract, such as demanding Ruff's payments be made via wire transfer fee (with wire fees born by Ruff). This was done simply to make it more difficult for Ruff to remain in good standing. Even still, there was no default except the one created by Defendant's own doing.

72. As a direct and proximate cause of Defendants' breaches of the Contract, Plaintiff suffered significant damages.

73. WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, and all other relief that the Court deems just and proper.

## COUNT IV
### Breach of Implied-in-Fact Contract
### (Ruff Against Defendants)

74. Plaintiff Ruff re-alleges and incorporates by reference Paragraphs 1 through 51 above.

75. This is a cause of action by Plaintiff against Defendants for breach of contract.

76. Plaintiff and Defendants entered into a contract.

77. Under the contract, the parties understood that Plaintiff was locating suitable clients for Defendants to sell insurance to in exchange for compensation (in the form of a commission).

78. Defendants breached the contract in material respects by, among other things, failing to pay Plaintiff a commission which was rightfully owed.

79. As a direct and proximate cause of Defendants' breaches of the contract, Plaintiff suffered significant damages.

80. WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, and all other relief that the Court deems just and proper.

## COUNT IV
## Promissory Estoppel
### (Ruff Against Defendants)

81. Plaintiff Ruff re-alleges and incorporates by reference Paragraphs 1 through 51 above.

82. This is a cause of action by Plaintiff against Defendants for promissory estoppel and is pled in the alternative to Count I for breach of contract.

83. Defendants represented to Plaintiff that it would pay a commission to Plaintiff for any clients that were referred by Plaintiff.

84. Defendants reasonably should have expected this representation to induce reliance in the form of action or forbearance on the part of Plaintiff.

85. Plaintiff reasonably relied on Defendants' representation, which induced Plaintiff to expend significant time and energy working for Defendants.

86. Injustice can be avoided only by enforcement of this representation against Defendants.

87. WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, and all other relief the Court deems just and proper.

## COUNT V
## Unjust Enrichment
### (Ruff Against Defendants)

88. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 51 above.

89. This is an action for unjust enrichment against Defendants and is pled in the alternative to Count I.

90. Plaintiff conferred a benefit on Defendants and Defendants had knowledge thereof. Among other things, Plaintiff located multiple clients suitable for insurance purchases with the expectation it would be paid for its work.

91. Defendants voluntarily accepted and retained the benefits conferred. The circumstances render Defendants' retention of the benefits inequitable unless Defendants pay Plaintiff the value of the benefits conferred.

92. Defendants have been unjustly enriched at the expense of Plaintiff.

93. Plaintiff is entitled to damages as a result of Defendants' unjust enrichment.

94. WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, and all other relief the Court deems just and proper.

## COUNT VI
### Fraud in the Inducement
### (Ruff Against Defendants)

95. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 51 above.

96. This is an action by Plaintiff Ruff against Defendants for fraud in the inducement.

97. Defendants had a business relationship with, and duty to, Plaintiff with respect to Plaintiff's duties as an insurance agent.

98. Plaintiff reposed confidence in Defendants, and Defendants accepted it, resulting in superiority and influence on the part of Defendants agreeing to refrain from self-dealing and from concealing material facts from Plaintiff.

99. As alleged above, Defendants made representations detailed herein to induce Plaintiff Ruff to enter into the purported Agreement, prior to execution of the Agreement, which were false and failed to meet with industry standard.

100. Defendants' intended for Plaintiff to rely on these false representations which Defendants knew, or should have known, were false.

101. But for Defendants' misrepresentations, Plaintiff would not have entered into the purported Agreement, and disclosed its Confidential Information and Works.

102. Plaintiff has been damaged by its justifiable reliance on Defendants' false representations.

103. WHEREFORE, Plaintiff Ruff demands judgment against Defendants for damages, punitive damages, interest, costs, and all other relief the Court deems just and proper.

### COUNT VII
### Breach of Fiduciary Duty
### (Plaintiffs Ruff and Reddy Against Defendants)

104. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 51 above.

105. This is an action for breach of fiduciary duty against Defendants.

106. Plaintiff and Defendants entered into an agreement whereby Plaintiff reposed trust and confidence in Defendants and Defendants accepted their trust.

107. On information and belief, Defendants breached their duties to Plaintiffs by failing to pay commissions and taking extraordinary measures as retaliation against the Plaintiffs. On information and belief, Defendants breached their duties to Reddy by forcing a surrender of the Reddy Policies without a default occurring.

108. Defendants' breach caused Plaintiff to suffer damages.

109. WHEREFORE, Plaintiffs Ruff and Reddy demand judgment against Defendants for damages, interest, costs, and all other relief the Court deems just and proper.

### COUNT VIII
### Breach of Contract and Duty of
### Good Faith and Fair Dealing
### (Reddy Against Allianz)

110. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 51 above.

111. This is a cause of action by Plaintiff against Allianz for breach of contract.

112. Plaintiff and Defendants entered into an enforceable Contract. The contract states, and usage of trade dictates, that a lapsed policy can be reinstated with payment in full.

113. Defendants breached the Contract in material respects by not allowing the reinstatement of the Reddy policies even though Reddy had found a new lender and was prepared to pay the policy in full.

114. As a direct and proximate cause of Defendants' breaches of the Contract, Plaintiff suffered significant damages.

115. WHEREFORE, Plaintiff demands judgment against Defendants for damages, interest, costs, and all other relief that the Court deems just and proper.

## COUNT VIIII
## Accounting
### (Ruff Against Defendants)

116. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 51 above.

117. This is an action for accounting against Defendants.

118. Plaintiff and Defendants share a fiduciary relationship in a confidential business enterprise pursuant to which Plaintiff is entitled to an accounting of all revenues and commissions.

119. A remedy at law is inadequate.

120. WHEREFORE, Plaintiff Ruff demands judgment against Defendants for damages, interest, costs, and all other relief the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a jury trial on all issues so triable.

Dated July 18, 2019.

MORGAN & MORGAN, P.A.
The Business Trial Group

*/s/ Clay M. Townsend*
Clay M. Townsend, Esq.
FBN: 363375
20 N. Orange Avenue, Ste. 1500
Orlando, FL 32801
Phone: (407) 418-2075
Fax: (407) 245-3346
CTownsend@forthepeople.com
*Attorney for Plaintiff*